[No. D020744. Fourth Dist., Div. One. Nov. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
HUNG HAO NGUYEN, Defendant and Appellant.

## COUNSEL

Charles F. Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

John T. Philipsborn as Amicus Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General,

Keith I. Motley and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—The primary issue in this case is whether Nguyen committed burglary when he entered a house with the intent to steal property by giving the victim a worthless check in exchange for various items. We conclude the conduct constitutes burglary.

Hung Hao Nguyen was convicted of three counts of burglary (Pen. Code,[1] § 459). In each count the victim advertised an item for sale in a local newspaper. Nguyen responded to the advertisements. The victims allowed Nguyen inside their homes. Once inside Nguyen negotiated a price for the items and paid by check. In each case, Nguyen wrote a check on an account he had earlier personally closed. The purchase price of the items ran from $135 to $560.

On appeal, Nguyen contends his conduct did not constitute burglary and that the prosecutor committed misconduct during closing argument.

DISCUSSION

I

*Burglary*

Section 459 defines the offense of burglary as follows: "Every person who enters any house . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

Nguyen first argues, based on a historical and semantic analysis of the law of burglary and larceny, that his conduct does not constitute burglary because the burglary statute requires an entry with an intent to commit "grand or petit *larceny* or any felony" (§ 459, italics added) and he intended neither a "larceny" nor a felony but rather a "petit [i.e., misdemeanor]" theft by false pretenses. He points out that originally "larceny" was a separate crime and that there is a separate code section for the crime of theft by false pretenses (§ 532). And therefore, he concludes an intent to commit a misdemeanor or "petit" theft by false pretenses is insufficient to support a burglary conviction.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

This argument, grounded on the use of the term "larceny," is without merit. As Nguyen acknowledges, in 1927, the Legislature amended the larceny statute to define theft as including the crimes of larceny, embezzlement and obtaining property by false pretense. (Stats. 1927, ch. 619, § 1, p. 1046.) At the same time, the Legislature also enacted section 490a stating, "[w]herever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (Stats. 1927, ch. 619, § 7, p. 1047.) Thus, the Legislature has indicated a clear intent that the term "larceny" as used in the burglary statute should be read to include all thefts, including "petit" theft by false pretenses.

Nguyen contends his conduct does not constitute burglary because the burglary laws are intended to protect against the "security of habitation or occupancy, rather than an offense against ownership or property" and here "[t]here was no home invasion or intrusion of the type sought to be prevented under the burglary laws."

Nguyen's argument is premised on rejecting a plain language interpretation of the burglary statute and instead applying a policy approach. Nguyen acknowledges if we adopt a plain language interpretation, as did the court in *People* v. *Salemme* (1992) 2 Cal.App.4th 775 [3 Cal.Rptr.2d 398], then we would affirm his conviction.

In *Salemme*, the court held the defendant committed burglary when he entered a home to sell the occupant fraudulent securities. *Salemme* began its analysis with a Supreme Court case from 1892, *People* v. *Barry* (1892) 94 Cal. 481 [29 P. 1026]. In *Barry*, the Supreme Court relied on a plain language interpretation of the burglary statute and held entry into a store, generally open to the public, with the intent to commit larceny constitutes burglary. The *Barry* court, after noting "common-law burglary and the statutory burglary of this state have but few elements in common" (*id.* at p. 482), stated: "[T]he language [of section 459] is so plain and simple that rules of statutory construction are not required to be consulted; the meaning is patent upon the face of the statute. No words are found in the statute qualifying the character, kind, time, or manner of the entry, save that such entry must be accompanied with a certain intent; and it would be judicial legislation for this court to interpolate other conditions into the section of the code." (*People* v. *Barry, supra,* 94 Cal. 481, 482-483.)

The *Salemme* court noted, "For 83 years, this plain meaning applied: *any* entry with the intent to commit a felony [or theft] into *any* structure enumerated in section 459 constituted burglary *regardless of the circumstances of the entry.* [Citations.]" (*People* v. *Salemme, supra,* 2 Cal.App.4th 775, 779.)

*Salemme* next looked at the Supreme Court's decision in *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], where the Supreme Court "revisited the issue of statutory interpretation of section 459" in deciding "the question whether a person can burglarize his or her own home." (*People* v. *Salemme, supra,* 2 Cal.App.4th 775, 779.) The *Gauze* court held a person cannot burglarize his own home. The Supreme Court stated, the "burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime" and "must be committed by a person who has no right to be in the building." (*People* v. *Gauze, supra,* 15 Cal.3d 709, 713-714.) The court, relying on its decision in *People* v. *Barry, supra,* 94 Cal. 481, defined a person with a "right to be in the building" as a person who had an unconditional right of possession, i.e., a person who could not be refused admittance at the threshold or ejected from the premises if the intent to commit a theft or felony were known. (*People* v. *Gauze, supra,* at pp. 713-714.)

The Supreme Court further stated:

" 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' Section 459, in short, is aimed at the danger caused by the unauthorized entry itself.

"In contrast to the usual burglary situation, no danger arises from the mere entry of a person into his own home, no matter what his intent is." (*People* v. *Gauze, supra,* 15 Cal.3d 709, 715.)

The *Salemme* court also looked at the decision in *People* v. *Superior Court* (*Granillo*) (1988) 205 Cal.App.3d 1478 [253 Cal.Rptr. 316], which followed the *Gauze* decision. *Granillo* held a person who enters a structure with the intent to commit a felony cannot be convicted of burglary when invited in by the occupant who knows of and endorses the felonious intent. The *Granillo* court reasoned in such a situation, it cannot be said that the accused would have been refused admission at the threshold or ejected after entry on the basis he entertained an intent to commit a theft or felony since the occupant, having knowledge of the intent, admitted the accused and did not eject him. The *Granillo* court, as in *Gauze*, also noted that one of the purposes of California's burglary law was to protect against the dangers to personal safety created by the " 'usual burglary situation.' " (*Id.* at p. 1483.)

*Salemme*, focusing on the language in *Gauze* and *Granillo* that the burglary laws were intended to protect a "possessory right of habitation" concluded: "since burglary is a breach of the occupant's possessory rights, a person who enters a structure enumerated in section 459 with the intent to commit a felony is guilty of burglary *except* when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the felonious intent." (*People v. Salemme, supra*, 2 Cal.App.4th 775, 781; see also *People v. Felix* (1994) 23 Cal.App.4th 1385, 1398 [28 Cal.Rptr.2d 860].)

Because the defendant in *Salemme* entered the home with a felonious intent and neither of the exceptions applied, the defendant could be convicted of burglary. The *Salemme* court rejected the argument the underlying offense must involve some threat of violence: "In effect, defendant would write into section 459 the requirement that the perpetrator must intend to commit a felony which poses a physical danger to the victim, rather than 'any felony' [or theft] as specified by the Legislature. This interpretation is not compelled by the purpose of the burglary statutes as discussed above and would constitute impermissible judicial legislation." (*People v. Salemme, supra*, 2 Cal.App.4th 775, 781-782.)

Nguyen argues *Salemme* was wrongly decided because it relied on the underlying purpose of the burglary statute as protecting a possessory right in property. Nguyen asserts the Supreme Court in *Gauze* held the purpose of California's burglary laws is to protect against the dangers to personal safety created by the "usual burglary situation." (*People v. Gauze, supra*, 15 Cal.3d 709, 715.) Nguyen argues since his offense did not involve the dangers to personal safety created by the "usual burglary situation," he should not have been convicted of burglary.

We find Nguyen's argument unpersuasive. *Gauze* does not stand for the proposition that the burglary laws should only be applied to the "usual burglary situation"; *Gauze* addressed only the limited issue of a right to enter property and whether an individual could burglarize his own home. *Gauze* did not hold that the only purpose of the burglary laws was to protect the "security of habitation" or hold that a burglary conviction would be proper only if the victim were endangered by the "entry." *Gauze* did not reach the issues presented here; it addressed only issues surrounding the possessory right to enter property, i.e., whether an entry occurs within the meaning of the burglary law when an individual enters property in which he has a possessory right.

We believe *Salemme*'s reliance on a plain language interpretation of the burglary statute and rejection of an approach that the underlying offense

must threaten the "security of habitation" was proper; *Gauze* does not compel a contrary result. *Salemme* correctly recognized the narrow holding in *Gauze* and correctly interpreted the Supreme Court's decisions in *Barry* and *Gauze* as permitting a burglary conviction in the unusual situation where the victim opens the door to a defendant intending to commit theft by false pretenses. Moreover, any doubts about the propriety of *Salemme*'s approach have been removed by subsequent Supreme Court opinions.

In 1993, the Supreme Court approved *Salemme*'s plain language interpretation approach to the burglary statute. The court stated: "Not uncommonly, courts must construe statutes in factual settings not contemplated by the enacting legislature. For example, in *People* v. *Salemme* (1992) 2 Cal.App.4th 775 [3 Cal.Rptr.2d 398], the court upheld a conviction of burglary when the felony the defendant entered the residence to commit was that of the fraudulent sale of securities. This scenario likely was not within the Legislature's contemplation when it enacted Penal Code section 459. Nonetheless, *the burglary statute, on its face, addressed the defendant's conduct and was properly interpreted to apply to it.*" (*Johnson* v. *Calvert* (1993) 5 Cal.4th 84, 89 [19 Cal.Rptr.2d 494, 851 P.2d 776], italics added.)

While the Supreme Court in this 1993 case was addressing a different issue (application of the Uniform Parentage Act) and therefore the statement is dicta, nonetheless we find it to be a persuasive endorsement of the *Salemme* decision and rejection of an argument that interpretation of section 459 should be limited by the purposes of the law served in the "usual burglary situation."

A year later, the California Supreme Court expressly recognized there are multiple purposes underlying the burglary law. In *People* v. *Montoya* (1994) 7 Cal.4th 1027, 1043 [31 Cal.Rptr.2d 128, 874 P.2d 903], the court stated: "Although the decisions generally have emphasized [the] aspect of the danger to personal safety created by the offense of burglary, other authority, involving factual circumstances in which actual danger appears not to exist or is relatively minor, and relying upon the purpose of the statute to protect against an invasion of a possessory right, has concluded that the threat to property interests alone, created by the burglar's entry and continued presence inside the structure, supports a finding of burglary. (*People* v. *Salemme*, *supra*, 2 Cal.App.4th 775, 781-782 . . . .)"

In *Montoya*, the court held an individual could be convicted of aiding and abetting a burglary if he formed the intent to commit, facilitate or encourage commission of the offense while the perpetrator remained inside the structure. In reaching its conclusion, the *Montoya* court relied on dual purposes

underlying the burglary law, i.e., "the increased danger to the personal safety of the occupant, *and the increased risk of loss or damage to his or her property* contemplated by the statutory proscription." (*People* v. *Montoya, supra,* 7 Cal.4th 1027, 1043, italics added.)

Thus the Supreme Court has indicated its approval of the approach and the holding in the *Salemme* case.

Here, Nguyen entered the homes with the intent to commit a theft. He did not have an unconditional possessory right as the occupant to enter any of his victims' homes. Nor was he invited in by the occupants with knowledge he had an intent to steal their property. Since Nguyen entered the victims' homes with the requisite intent and no exceptions applied, he was properly convicted of burglary pursuant to the clear language of section 459.

## II

### *Prosecutorial Misconduct*

Nguyen contends the prosecutor committed misconduct by misstating the standard of reasonable doubt.

During closing argument, the prosecutor stated:

"The standard is reasonable doubt. That is the standard in every single criminal case. And the jails and prisons are full, ladies and gentlemen. [¶] It's a very reachable standard that you use every day in your lives when you make important decisions, decisions about whether you want to get married, decisions that take your life at stake when you change lanes as you're driving. If you have reasonable doubt that you're going to get in a car accident, you don't change lanes.

"So it's a standard that you apply in your life. It's a very high standard. And read that instruction, too. I won't paraphrase it because it's a very difficult instruction, but it's not an unattainable standard. It's the standard in every single criminal case."

"Prosecutorial misconduct implies the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].) To establish prosecutorial misconduct, it is not necessary to show the prosecutor acted in bad faith, but it is necessary to show the right to a fair trial was prejudiced. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr.

141, 589 P.2d 396].) If the defendant fails to object to the asserted misconduct and does not request an instruction or admonition to lessen any possible prejudice, then the asserted objection is thereby waived. (*People* v. *Ghent* (1987) 43 Cal.3d 739, 762 [239 Cal.Rptr. 82, 739 P.2d 1250].)

Nguyen has a valid point. The prosecutor's argument that people apply a reasonable doubt standard "every day" and that it is the same standard people customarily use in deciding whether to change lanes trivializes the reasonable doubt standard. It is clear the almost reflexive decision to change lanes while driving is quite different from the reasonable doubt standard in a criminal case. The marriage example is also misleading since the decision to marry is often based on a standard far less than reasonable doubt, as reflected in statistics indicating 33 to 60 percent of all marriages end in divorce. (See Dyer, *The Divorce Rate Isn't What You Think*, Dallas Morning News (May 6, 1995) p. 3C; Kasper, *Marriage is Rougher Second Time Around*, Kansas City Star (Sept. 18, 1995) p. E5; Epstein, *Automation, E-Mail Encourage Isolation*, S.F. Chronicle (Sept. 14, 1995) p. A1.)

As our Supreme Court stated over 120 years ago in *People* v. *Brannon* (1873) 47 Cal. 96, 97: "The judgment of a reasonable man in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of a criminal case involving life or liberty, something further is required. . . . There must be in the minds of the jury an abiding conviction, to a moral certainty, of the truth of the charge, derived from a comparison and consideration of the evidence."

We strongly disapprove of arguments suggesting the reasonable doubt standard is used in daily life to decide such questions as whether to change lanes or marry. The argument is improper even when the prosecutor, as here, also states the standard for reasonable doubt is "very high" and tells the jury to read the instructions. Had Nguyen objected to the prosecutor's argument, the court surely would have sustained his objection and admonished the jury.

Nguyen, however, did not object. Since an objection here and admonition by the court would have cured the error, Nguyen waived the issue for appeal. Moreover, we conclude Nguyen was not prejudiced since the prosecutor did direct the jury to read the reasonable doubt instruction and the jury was

correctly instructed on the standard. We must presume the jury followed the instruction and that the error was thereby rendered harmless.[2]

DISPOSITION

The judgment is affirmed.

Benke, J., and McDonald, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 14, 1996.

---

[2]Having concluded the prosecutor's misconduct constituted harmless error, we need not address Nguyen's argument his counsel's failure to object constituted ineffective assistance of counsel; any failure by counsel was likewise harmless.