BAXTER, J., Dissenting.
"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.” (Pen. Code, § 211.)[1] As this court has explained, “[r]obbery is larceny with the aggravating circumstances that ‘the property is taken from the person or presence of another . . .’ and ‘is accomplished by the use of force or by putting the victim in fear of injury.’ (People v. Gomez (2008) 43 Cal.4th 249, 254, fn. 2 [74 Cal.Rptr.3d 123, 179 P.3d 917].)” (People v. Anderson (2011) 51 Cal.4th 989, 994 [125 Cal.Rptr.3d 408, 252 P.3d 968] (Anderson).) “The crime of robbery is a continuing offense that begins from the time of the original taking [and does not end] until the robber reaches a place of relative safety.” (People v. *791 Estes (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909] (Estes).) Hence, where the property is peacefully acquired, but force or fear is then used to facilitate the carrying away of the loot or the making good of an escape before the thief has reached a place of temporary safety, the crime is transformed into robbery. (Anderson, at p. 994; People v. Gomez, supra, 43 Cal.4th at pp. 255-256 (Gomez); Estes, at p. 28.)
Notwithstanding these settled principles, defendant contends a thief’s use of force or fear to facilitate his flight from a retail store after acquiring purchases through theft by false pretenses, as when an altered credit or gift card is used to make a fraudulent purchase, as a matter of law can never be transformed into a robbery. The majority agrees, reasoning that because theft by false pretenses lacks the elements of a trespassory taking and asportation, “[t]he crime of theft by false pretenses ends at the moment title to the property is acquired, and thus cannot become robbery by the defendant’s later use of force or fear.” (Maj. opn., ante, at p. 787.) Under the majority’s analysis, where the thief makes a fraudulent purchase or purchases with an altered credit card, itself a separately chargeable felony offense (see § 484g), as long as he gets past the cash register with the fraudulently purchased loot in hand, nothing he does thereafter to facilitate his escape with the stolen items, whether it be the use of physical force against store employees or security personnel, the placing of such persons in fear of injury or harm, the actual use of a weapon, or the threat to use an allegedly concealed weapon, can transform the theft into robbery.
This reasoning and result contradicts the legislative intent behind California’s robbery and unified theft statutes. (§§ 211, 484, subd. (a), 490a.) It is in conflict with long-standing California jurisprudence, including several decisions of this court that have reached the opposite conclusion. And it is patently at odds with the important public policies served by the robbery statute. “ ‘Robbery violates the social interest in the safety and security of the person [robbed] as well as the social interest in the protection of property rights.’ ” (Gomez, supra, 43 Cal.4th at p. 264, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 350, italics added; see People v. Scott (2009) 45 Cal.4th 743, 749 [89 Cal.Rptr.3d 213, 200 P.3d 837] [“Robbery is a crime of violence committed against a person.”].) Both interests are implicated when a thief enters a business establishment, steals property, and then uses force or fear against a robbery victim or victims while fleeing, regardless of the particular manner of theft employed. I respectfully dissent.
Facts
The following facts are drawn from the opinion of the Court of Appeal. Defendant went to a Walmart store in Palmdale in July 2009. Michael Ortiz, a *792 cashier who had been working at the store for six months, testified he was covering register No. 22 during cashier Jackie Pena’s break when defendant attempted to purchase four Walmart gift cards from him in two separate transactions. The exchange between defendant and the cashiers was recorded on the store’s security cameras and played for the jury while Ortiz described his interaction with defendant.
During the first transaction, defendant came' to register No. 22 and purchased a Walmart gift card in the amount of $200, paying for it with a “gold looking card” that he swiped through the card processing machine. After the transaction was approved, defendant attempted to purchase three additional Walmart gift cards from Ortiz. As Ortiz was processing the transaction, Pena returned to register No. 22 and noticed defendant was using what appeared to be a credit card to purchase the gift cards. Pena informed Ortiz and defendant that, according to store policy, gift cards could only be purchased with a debit card or cash. Defendant handed back the three gift cards and Ortiz voided the second transaction. Defendant was apparently permitted to keep the first gift card purchased through the initial transaction. Shortly thereafter Ortiz told his store manager he had permitted a gift card to be purchased with a credit card because he did not know Walmart had a policy prohibiting it.
Defendant then proceeded to register No. 1 and attempted to purchase another Walmart gift card at that register. Scotty Southwell, a plainclothes loss prevention officer at the Walmart store, testified he was in the loss prevention office when he was notified suspicious transactions were taking place. Southwell was given a description of defendant and determined he was at register No. 1. Southwell went to a bench across from that register and directly observed defendant purchase a Walmart gift card with a red- or orange-colored card.
After defendant finished the transaction, Southwell, now accompanied by loss prevention officer Vyron Harris, approached defendant. Southwell identified himself and asked defendant for the receipt and card used to pay for the transaction he had just completed. Defendant handed Southwell a receipt and a red- or orange-colored card. The last four digits of the card did not match the four digits of the card on the receipt.[2] Defendant apologized, claiming he had given Southwell the wrong card, and gave him two gold cards. The last four digits of those cards, likewise did not match the numbers on the receipt.
Defendant began walking toward an exit door. Southwell, followed by Harris, asked defendant why the card numbers did not match those on the *793 receipt. Defendant handed Southwell yet another card; the numbers again did not match. Southwell then asked defendant to come to the loss prevention office for further investigation. Defendant kept walking toward the exit. A few feet from the exit door defendant pushed Southwell, dropped some receipts and tried to run. Southwell, Harris and two additional loss prevention officers (the victims of the four robbery counts) attempted to detain defendant, who struggled to break free. After defendant was wrestled to the ground, he moved his left arm toward his waistband, stating he was reaching for a gun. Defendant was forcibly restrained and handcuffed. No gun was found on his person. Recovered from defendant’s possession were four payment cards issued by MasterCard and Visa, as well as several gift cards from Walmart and elsewhere.
Much of the incident was recorded on the store’s multiple security cameras. The surveillance tapes of defendant’s attempted flight and detention, like the tapes of the transactions at the registers, were played for the jury.
Los Angeles County Sheriff’s Deputy Erich Doepking, who at the time of trial had two years of experience investigating financial crimes, testified the cards recovered from defendant had been altered so the account number on the face of the cards did not match the account information re-encoded on their magnetic strips.
Defendant testified in his own behalf, admitting he had previously been convicted of nine felonies, including robbery, and one misdemeanor. He contended he had gone to the Walmart store with a friend who had given him two gift cards with a combined value of $300. He claimed he tried to use these cards to purchase several small denomination Walmart gift cards from the cashiers at registers Nos. 5 and 22. Defendant denied going to register No. 1, claiming he had gone to the service manager’s area to get approval for the purchase of the gift cards when Southwell approached him.
Defendant testified further that he began walking toward the exit after he had given Southwell all the cards and receipts in his possession, but Southwell kept questioning him. Defendant was nervous in part because he had smoked marijuana and consumed alcohol that morning and had used methamphetamine the day before. Defendant denied intentionally pushing Southwell, contending Southwell had cut him off just as he was trying to open the exit door. Defendant also denied struggling with the loss prevention officers or threatening that he had a concealed gun.
The jury convicted defendant of four counts of second degree robbery, one count of second degree burglary, fraudulent use of an access card or account information, grand theft, and forgery.
*794 Discussion
As noted, robbery is “the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.” (§ 211.) Moreover, “robbery is a continuing offense that begins from the time of the original taking [and does not end] until the robber reaches a place of relative safety.” (Estes, supra, 147 Cal.App.3d at p. 28.) Larceny, like robbery, has likewise long been deemed a “continuing offense.” (Gomez, supra, 43 Cal.4th at p. 254.) “All the elements [of either offense] must be satisfied before the crime is completed. However ... no artificial parsing is required as to the precise moment or order in which the elements are satisfied. This conclusion is consistent with decades of California jurisprudence.” (Ibid., fn. omitted.)
These well-established rules plainly apply where the thief grabs the loot from a store employee (a theft by larceny) and then uses force or fear to facilitate his escape with the loot before reaching a place of temporary safety. Theft by larceny “requires the taking of another’s property, with the intent to steal and carry it away. [Citation.] ‘Taking,’ in turn, has two aspects: (1) achieving possession of the property, known as ‘caption,’ and (2) carrying the property away, or ‘asportation.’ [Citations.] Although the slightest movement may constitute asportation [citation], the theft continues until the perpetrator has reached a place of temporary safety with the property.” (Gomez, supra, 43 Cal.4th at pp. 254-255, fn. omitted.)
In contrast, theft by trick and theft by false pretenses both involve appropriation of property when consent to its possession is obtained by fraud or deceit. With theft by trick, however, the property owner transfers, and intends to transfer, only possession, whereas with theft by false pretenses, the owner transfers both possession and ownership. (People v. Ashley (1954) 42 Cal.2d 246, 258 [267 P.2d 271] (Ashley) [“[theft by trick] is the appropriation of property, the possession of which was fraudulently acquired; obtaining property by false pretenses is the fraudulent or deceitful acquisition of both title and possession”]; People v. Traster (2003) 111 Cal.App.4th 1377, 1387 [4 Cal.Rptr.3d 680] [“presence or absence of evidence of the fourth element of transferring ‘ownership’ or ‘title’ distinguishes the crime of theft by false pretenses from the crime of theft by trick . . .”].)
The question before us is whether those same rules allowing conviction for robbery where the underlying theft is theft by larceny or theft by trick, and where force or fear is utilized at some point after the taking in order to facilitate escape with the loot, also apply when the thief unlawfully obtains the property through false pretenses, as when he uses an altered or re-encoded gift or credit card to make a fraudulent store purchase, and then uses force or *795 fear to escape with the stolen goods. The Legislature has told us they do. So has this court, in several of our past decisions.
a. Relevant statutory provisions and underlying legislative intent
As the majority acknowledges, the crime of theft is comprised of several different common law crimes, including theft by larceny, theft by trick, and theft by false pretenses. (See People v. Cuellar (2008) 165 Cal.App.4th 833, 837 [81 Cal.Rptr.3d 252].) However, in 1927, our Legislature consolidated these common law crimes into a single státutory crime denoted “theft” (§ 484.)[3] (See Gomez, supra, 43 Cal.4th at p. 255, fn. 4; Cuellar, at p. 837.) It is true that the common law offenses consolidated in section 484 are each “aimed at different criminal acquisitive techniques” (Ashley, supra, 42 Cal.2d at p. 258), and have distinct elements (ibid.). Nevertheless, “[t\he purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. . . . Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an ‘unlawful taking’ has been proved.” (Ibid., italics added; accord, People v. Counts (1995) 31 Cal.App.4th 785, 793 [37 Cal.Rptr.2d 425].) Hence, even where “theft” (§ 484) is itself the charged crime, “a general verdict of guilt may be sustained on evidence establishing any one of the consolidated theft offenses [citations]” (People v. Curtin (1994) 22 Cal.App.4th 528, 531 [27 Cal.Rptr.2d 369]), although “the offense shown by the evidence must be one on which the jury was instructed and thus could have reached its verdict” (ibid.).
The “taking” element of robbery is not specifically defined or limited in the robbery statute (§ 211), nor has that element ever been explicitly limited to theft by larceny or theft by trick in the case law. (Ashley, supra, 42 Cal.2d at p. 258.) In the context of the issue before us, whether theft by false pretenses can be transformed through subsequent use of force or fear into a robbery, the Legislature’s consolidation of all forms of common law theft into a single statutory crime denoted “theft” (§ 484)—done for the specific purpose of “removing] the technicalities that existed in the pleading and proof of these crimes at common law” (Ashley, at p. 258)—itself serves to defeat defendant’s hypertechnical claim that a theft committed by false pretenses, even though accompanied by the use of force or fear before the thief has reached a place of temporary safety, can never be transformed into a robbery.
*796 Of even greater significance to the issue before us is the legislative directive found in section 490a. At the same time as the 1927 consolidation of all common law forms of theft into a unified “theft” crime (§ 484, subd. (a)), our Legislature also enacted this provision: “Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall... be read and interpreted as if the word ‘theft’ were substituted therefor.” (§ 490a.)
Section 490a indicates the Legislature’s intent that the different types of common law theft consolidated in section 484, subdivision (a), are to be treated as the single crime of “theft” in California. The case of People v. Nguyen (1995) 40 Cal.App.4th 28 [46 Cal.Rptr.2d 840] (Nguyen), furnishes an example of section 490a’s application to the crime of burglary, where the unlawful entry is for the purpose of committing theft. In Nguyen, the defendant argued that his intent to commit petty theft by false pretenses was insufficient to support his burglary conviction. (40 Cal.App.4th at p. 30.) Rejecting that argument, the Nguyen court pointed to the Legislature’s use of the term “larceny” in the burglary statute (§ 459 [“Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.” (italics added)]), and went on to find dispositive section 490a’s directive to replace “larceny” with the broader term “theft.” (Nguyen, supra, at p. 31.) Upholding the defendant’s burglary conviction, the Nguyen court explained that the Legislature, by simultaneously amending section 484 (the theft statute) and enacting section 490a, “indicated a clear intent that the term ‘larceny’ as used in the burglary statute ... be read to include all thefts, including ‘petit’ theft by false pretenses.” (Nguyen, supra, at p. 31.)[4]
True, unlike the burglary statute, the robbery statute does not utilize either the term “larceny” or the term “stealing.” Rather, it uses the broader phrase “felonious taking of personal property” (§ 211) to denote the taking element *797 of robbery. Section 490a, however, states that any law or statute that “refers to or mentions larceny ... or stealing” (italics added) should be read and interpreted as if the word “theft” were substituted. Thus, the statute need not specifically mention larceny or stealing; to simply refer to larceny or stealing is enough. A felonious taking is a taking done with the intent to steal another’s property (People v. Tufunga (1999) 21 Cal.4th 935, 948 [90 Cal.Rptr.2d 143, 987 P.2d 168] (Tufunga); 2 Burdick, Law of Crime (1946) § 563, p. 311), which is tantamount to the commission of larceny (see Perkins & Boyce, Criminal Law, supra, Offenses Against Property, ch. 4, § 2, p. 343 [“Because all larceny was felony at common law, the word ‘felonious,’ used in connection with the taking of property, means a taking with intent to steal. The ‘taking’ means a taking of possession in this definition [of robbery], as in the definition of larceny.” (fn. omitted)].)
In short, the robbery statute is a statute that “refers to . . . larceny ... or stealing.” (§ 490a, italics added.) That is because the “felonious taking” element of robbery is a taking done with the intent to steal another’s property “against his will.” (§ 211.) Because section 490a directs that any law that “refers to . . . larceny ... or stealing” is to be read and interpreted as if the term “theft” was inserted therein, and because the robbery statute incorporates such a reference, albeit indirectly, the “felonious taking” element of robbery must be interpreted as synonymous with “theft” (§§ 484, subd. (a), 490a). (See Tufunga, supra, 21 Cal.4th at pp. 938-939 [“the ‘felonious taking’ required for robbery under section 211, as well as that for theft under section 484, is a taking accomplished with felonious intent, that is, the intent to steal, a state of mind that California courts for over 150 years have recognized as inconsistent with the good faith belief that the specific property taken is one’s own.” (Italics added)].) Here, defendant’s conduct in stealing gift cards from Walmart, although accomplished by false pretenses, plainly satisfied the felonious taking element of robbery.
And there is more. The consolidated theft statute itself goes on to expressly provide, “For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof . . . .” (§ 484, subd. (a), italics added.) This explicit language removes any doubt that the Legislature intended the common law crime of theft by false pretenses—now a form of theft consolidated into the unified statutory offense of “theft” found in section 484, subdivision (a)—to be treated the same as theft by larceny or theft by trick, not only for purposes of pleading and proof, but also with respect to the consequences of using force or fear in connection with its commission. If the fraudulent representation or pretense continues over time so as to cover all fruits of the crime, whenever received, there is no reason, in law or logic, to interpret the taking element of the robbery statute any differently for purposes of proving an “Estes robbery” (Estes, supra, 147 *798 Cal.App.3d at p. 28), where the underlying theft is theft by false pretenses, and the thief uses force or fear to facilitate his escape with the loot moments after taking possession of it. The Legislature could not have intended otherwise.
The majority’s analysis of the 18th century English common law roots of the various common law forms of theft (maj. opn., ante, at pp. 781-785), going back as far as certain of the English Parliament’s statutory enactments in the year 1275 (id. at p. 782), in support of its conclusion that the common law crime of theft by false pretenses is not a continuing form of theft, and cannot be transformed into robbery where force or fear is later used, overlooks the important remedial legislation that consolidated the common law forms of theft into the unified crime of “theft” in California. (§§ 484, subd. (a), 490a.) The robbery statute, together with the legislative intent behind the consolidated theft statutes (ibid.), are what directly control in this case. (Cf. Tufunga, supra, 21 Cal.4th at pp. 938-939 [because the Legislature incorporated the “claim of right” defense into the robbery statute when robbery was first codified in 1872, such clear legislative intent controls notwithstanding public policy considerations disfavoring the forcible recapture of property].)
b. Relevant California decisions
Justice Perluss, writing for a unanimous Court of Appeal below, reasoned that defendant’s claim—that his robbery convictions must be reversed because theft by false pretenses lacks the elements of a trespassory taking and asportation, and is completed, in the context of a fraudulent store purchase, when the defrauded merchant passes possession and title to the thief at the cash register—“unduly focuses on the ‘acquisitive technique’ underlying the theft (Ashley, supra, 42 Cal.2d at p. 258)[,] that is, the consensual delivery of possession and ownership of the property based on false pretenses[,] rather than [on] the ‘ “central element of the crime of robbery,” ’[to wit,] that ‘ “force or fear [is] applied to the individual victim in order to deprive him of his property.” ’ (Gomez, supra, 43 Cal.4th at p. 265.)” (Fn. omitted.) I agree with the Court of Appeal’s reasoning in this respect. A number of decisions of this court are in accord.
Many decisions since Estes, supra, 147 Cal.App.3d 23, have reaffirmed that court’s conclusion that theft (§§ 484, subd. (a), 490a) becomes robbery even when possession of property is peacefully or fraudulently obtained if force or fear is thereafter used to either carry it away or retain it. (See, e.g., Anderson, supra, 51 Cal.4th at p. 994 [citing Estes]; Gomez, supra, 43 Cal.4th at pp. 258-261 [discussing Estes in holding robbery victim need not be present when defendant initially takes money; “California has described *799 robbery as a continuing offense for decades.”]; People v. Hill (1998) 17 Cal.4th 800, 850 [72 Cal.Rptr.2d 656, 952 P.2d 673] (Hill) [“ ‘[E]ven if the perpetrator used peaceful means, such as a pretext, to separate the property from the victim, “what would have been a mere theft is transformed into robbery if the perpetrator . . . [later] uses force to retain or escape with [the property].” ’ ”]; People v. Webster (1991) 54 Cal.3d 411, 441 [285 Cal.Rptr. 31, 814 P.2d 1273] [same]; People v. Cooper (1991) 53 Cal.3d 1158, 1165, fn. 8 [282 Cal.Rptr. 450, 811 P.2d 742] [citing Estes with approval; “mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot”].)
It is true, as defendant observes, that this court’s past decisions touching on that proposition have somewhat inconsistently referred to robbery both as an aggravated form of larceny (see, e.g., Anderson, supra, 51 Cal.4th at p. 994; Gomez, supra, 43 Cal.4th at p. 254) and an aggravated form of the broader term theft (see, e.g., People v. Ortega (1998) 19 Cal.4th 686, 699 [80 Cal.Rptr.2d 489, 968 P.2d 48] [“Theft, in whatever form it happens to occur, is a necessarily included offense of robbery.”]; People v. Bradford (1997) 14 Cal.4th 1005, 1055 [60 Cal.Rptr.2d 225, 929 P.2d 544] [“ ‘Theft is a lesser included offense of robbery, which includes the additional element of force or fear’ ” (quoting People v. Melton (1988) 44 Cal.3d 713, 746 [244 Cal.Rptr. 867, 750 P.2d 741]]).)
However, it is also true, as noted by the Court of Appeal, that this court’s prior references to robbery as a form of aggravated larceny simply reflect the reality that most robberies are accomplished by means of a larceny. Because the victim of a theft by false pretenses intends to convey possession and title of the property to the thief, there is necessarily no victim resistance at the time the property is acquired, and consequently, no occasion to use force to overcome any resistance. The situation, however, can change in the less typical circumstance where the victim discovers the false pretenses while the perpetrator is still in his or her presence. If the victim seeks to reclaim the property upon discovery of the false pretenses, any use of force or fear by the thief in an effort to retain the stolen property transforms the theft into a robbery. (Hill, supra, 17 Cal.4th at p. 850.) It may also be observed that, until today, none of this court’s decisions characterizing robbery as an aggravated form of larceny have expressly held that an “Estes robbery” can only be predicated on theft by larceny or theft by trick, as opposed to theft by false pretenses.
I further agree with the Court of Appeal that, with regard to relevant public policy considerations, there is simply no public policy justification for treating theft by false pretenses differently from theft by larceny or theft by *800 trick when the defendant uses force or fear after the property owner, who technically consents to deliver ownership (i.e., title) of the goods, immediately recognizes he or she is a victim of a scam and tries to reclaim the property. Regardless of the victim’s fraudulently induced intent in transferring the property, the key factors for establishing robbery are the defendant’s intent “to deprive the victim of the property permanently” (Anderson, supra, 51 Cal.4th at p. 994), the defendant’s greater culpability resulting from the application of force or fear, and the need to deter more dangerous conduct (Gomez, supra, 43 Cal.4th at p. 264). Both were met in this case.
The majority reasons that theft by larceny requires a trespassory taking, which is a taking without the property owner’s consent, whereas “theft by false pretenses involves the consensual transfer of possession as well as title of property; therefore, it cannot be committed by trespass.” (Maj. opn., ante, at p. 788.) From this premise, the majority goes on to conclude that “[bjecause a ‘felonious taking,’ as required in California’s robbery statute (§ 211), must be without the consent of the property owner, or ‘against his will’ (ibid.), and Walmart consented to the sale of the gift cards, defendant did not commit a trespassory (nonconsensual) taking, and hence did not commit robbery.” (Maj. opn., ante, at p. 788.)
With regard to the robbery statute’s further requirement of asportation of the stolen goods, the majority then reasons that because theft by false pretenses lacks the elements of a trespassory taking, “[t]he crime of theft by false pretenses ends at the moment title to the property is acquired” (maj. opn., ante, at p. 787), which, here, would be the moment at which the defrauded cashiers handed defendant the fraudulently purchased (i.e., stolen) Walmart gift cards. Although defendant then walked several feet toward the store exit after being questioned by the loss prevention officers—in a plain attempt to carry off or “asport” the stolen loot in the presence of the investigating officers—not so, says the majority. The theft crime ended several feet back at the cash register, they reason, and hence there could be no .“asportation” for purposes of robbery.
The majority’s legal reasoning is flawed. The robbery statute does not expressly require that the taking be “without the consent of the property owner.” (Maj. opn., ante, at p. 788, italics omitted.) It expressly requires that the taking be “against his will.” (§ 211.) This court has held that “[t]he act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally . . . .” (People v. Davis (1998) 19 Cal.4th 301, 305 [79 Cal.Rptr.2d 295, 965 P.2d *801 1165] (Davis), italics added, fns. omitted.)[5] As we explained in Gomez, supra, 43 Cal.4th 249, “ ‘When the perpetrator and victim remain in close proximity, a reasonable assumption is that, if not prevented from doing so, the victim will attempt to reclaim his or her property.’ ” (Id. at p. 264.) As these decisions explain, in the context of robbery, including an Estes robbery, a “theft” (§§ 484, subd. (a), 490a) committed through false pretenses is a taking “against [the property owner’s] will.” (§ 211.)
The majority’s further reliance on People v. Beaver (2010) 186 Cal.App.4th 107 [111 Cal.Rptr.3d 726] is misplaced, as that decision is entirely inapposite to the facts giving rise to the issue concerning the robbery statute directly before us. As the majority observes, in Beaver “the defendant staged an accident at his place of employment, a ski resort, to obtain medical expenses for a preexisting injury to his knee. The defendant was convicted of grand theft. The Court of Appeal reversed the conviction, holding that the jury was instructed on the incorrect type of theft—theft by larceny—and instead should have been instructed on theft by false pretenses. [The] Beaver [court] said: ‘The present matter did not involve a taking of property from another without his consent. [The ski resort] willingly paid for defendant’s medical treatment on the false representation that [it] had caused defendant’s injuries. This was theft by false pretenses, not larceny.’ (Id. at p. 121.)” (Maj. opn., ante, at p. 788.)
Beaver was not a robbery case; the charge was grand theft.[6] In Beaver, the fraudulently staged accident at the ski resort was complete well before the defrauded employer actually paid out medical expenses for the defendant’s “preexisting injury to his knee.” There is simply no meaningful comparison to be made between the situation faced by the employer in Beaver as a result of the fraudulently staged accident, which led to the payout of medical expenses at some point well after the completed theft by false pretenses, and the situation faced by Walmart and its security guards here, who directly observed defendant’s fraudulent transaction at register No. 1, who were in the process of questioning and then pursuing him as he walked from the cash register and headed toward the exit with the stolen loot, and who then became the victims of his use of force and fear as they were attempting to apprehend him, for what ultimately proved to be the commission of five distinct felonies.
*802 Under the particular facts of this case, it cannot in reason be said that Walmart and its employees consented to the taking of the fraudulently procured gift cards “freely and unconditionally.” (Davis, supra, 19 Cal.4th at p. 305.) By the time of defendant’s third fraudulent purchase at register No. 1, he had already been told that sales of gift cards purchased with other gift or credit cards was against store policy. He had been asked to return, and had returned, the three gift cards handed to him during the voided transaction at register No. 22, but was still in possession of the first gift card he had fraudulently “purchased” during the initial transaction at that cash register. He was under suspicion of attempting fraudulent purchases by the time he walked over to register No. 1 to attempt the ploy yet a third time. Security personnel had been-alerted, and loss prevention officer Southwell had proceeded to the area of the register and directly observed defendant making the final fraudulent purchase of a Walmart gift card with a red- or orange-colored card. At some point moments thereafter Southwell interceded, questioning defendant as he left the register and requesting the credit or gift card he had just used to make the purchase, and the receipt. Additional security guards arrived to assist Southwell as defendant began walking toward the store exit with the fraudulently purchased (i.e., stolen) Walmart gift cards in his possession.
What matters in this case is not whether defendant’s theft crime was theft by larceny or theft by false pretenses under the common law. What matters is whether his conduct established the requisite elements of robbery. “ ‘[E]ven if the perpetrator used peaceful means, such as a pretext, to separate the property from the victim, “what would have been a mere theft is transformed into robbery if the perpetrator . . . [later] uses force to retain or escape with [the property].” ’ ” (People v. Webster[, supra,] 54 Cal.3d 411, 441 . . . .)” (Hill, supra, 17 Cal.4th at p. 850, italics added.) Although theft by false pretenses, when considered as a separate common law crime, does not require a trespassory taking or asportation of the stolen property, it may, on facts such as these, be transformed into robbery through the use of force or fear.
Here, it matters not that the common law crime of theft by false pretenses would have been “complete” at the moment defendant walked from the cash register. The evidence plainly established that he did, from that point on, carry away or “asport” the stolen property, and that he then used force and fear against four security officers to facilitate his escape with the loot before reaching a place of temporary safety. As such, all of the elements of robbery were established. (Gomez, supra, 43 Cal.4th at pp. 255-260; Hill, supra, 17 *803 Cal.4th at p. 850.) Any other result would be contrary to the important public policies behind our robbery and unified theft statutes.[7]
Conclusion
I would affirm the judgment of the Court of Appeal.

 All further statutory references are to the Penal Code.

 The card Williams handed Southwell had a sticker on it. When Southwell peeled back the sticker, it revealed the card was a gift card with a fixed value of $50. The Walmart gift card Williams purchased with it had a value of $200.

 Section 484, subdivision (a), provides, in part, “Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property ... is guilty of theft.”

 The majority places reliance on this court’s decision in People v. Myers (1929) 206 Cal. 480 [275 P. 219] (Myers), decided two years after the consolidated theft statutes (§§ 484, subd. (a), 490a) were enacted by a single piece of legislation (Stats. 1927, ch. 619, §§ 1, 7 pp. 1046-1047), and in which decision we suggested, “the essence of section 490a is simply to effect a change in nomenclature without disturbing the substance of any law.” (Myers, at p. 485; see maj. opn., ante, at p. 789). I would place greater reliance on the later decisions of this court, discussed fully in my dissent, that have gone on to explain in greater detail the full legislative intent and purpose behind the consolidated theft statutes which, together with the robbery statute, control in this case. (See, e.g., Gomez, supra, 43 Cal.4th at p. 255, fn. 4; Ashley, supra, 42 Cal.2d at p. 258.) The intermediate appellate court decision in Nguyen, supra, 40 Cal.App.4th 28, further informs the legislative intent behind the unified theft statutes, as it explains how section 490a applies to the felony of burglary where “theft” (§§ 484, subd. (a), 490a) forms the basis for the illegal entry. The rationale of Nguyen is applicable, by analogy, to the issue pertaining to the robbery statute here before us. This court denied a petition for review in Nguyen. (Nguyen, at p. 37.)

 “This is not traditional trespass onto real property, of course, but trespass de bonis asportatis or trespass ‘for goods carried away.’ (Perkins [& Boyce, Criminal Law[, supra], at p. 304.)” (Davis, supra, 19 Cal.4th at p. 305, fn. 2.)

 Defendant was likewise convicted of grand theft, as well as second degree burglary, forgery, the unlawful use of an access card or account information, a felony, and the four robbery counts. On appeal, however, he challenged only his robbery convictions.

 This case directly involves a theft by false pretenses through use of an altered or re-encoded gift or credit card to make a fraudulent purchase from a retail business establishment. But were a thief to instead knowingly use a stolen credit card, a forged check, or even his own check, knowing there were insufficient funds to cover it, in order to make such a fraudulent purchase from a store, or were he to use any such fraudulent document to induce a teller of a bank or check cashing service to relinquish possession and title to a quantity of cash, the majority’s holding—that any “theft by false pretenses cannot satisfy the ‘felonious taking’ element of robbery” (maj. opn., ante, at p. 789)—would presumably apply.
Indeed, if, during any of these fraudulent transaction scenarios, the thief for whatever reason were to pull out a gun and shoot and kill one or more persons while fleeing with the loot, under the majority’s holding, there would be no robbery as a matter of law, and hence, no charge of felony-murder robbery would lie. The majority expressly concedes as much. (Maj. opn., ante, at p. 789, fn. 4.) Although our decision in Hill, supra, 17 Cal.4th 800, a capital murder appeal with many issues, merely discussed the point in a single paragraph (id. at p. 850), the plain implication of our holding in Hill is that theft by false pretenses may be transformed into robbery through the use of fear or force, and that where a victim is killed, the crime becomes felony-murder robbery.
Given the important societal interests served by the robbery statute—that of protecting “ ‘the safety and security of the person [robbed] as well as the social interest in the protection of property rights.’ ” (Gomez, supra, 43 Cal.4th at p. 264, italics added)—I find the outcome in this case particularly troubling.