Filed 11/20/20 P. v. Evans CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B303471 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA074781) |
| v. | |
| GLEN DALE EVANS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Shannon Knight, Judge. Affirmed.

Laura R. Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Glen Dale Evans appeals the judgment entered following a jury trial in which he was convicted of one felony count of dissuading a witness from reporting a crime (Pen. Code,[1] § 136.1, subd. (b)(1); count 1), two felony counts of vandalism causing over $400 damage (§ 594, subd. (a); counts 2, 4), and one count of misdemeanor domestic battery (§ 243, subd. (e)(1); count 3), a lesser included offense of felony injury to a spouse (§ 273.5, subd. (a)).  In bifurcated proceedings, the trial court found true the allegations that appellant was previously convicted of three serious or violent felonies under the "Three Strikes" law (§§ 667, subd. (d), 1170.12, subd. (b)), and served two prison terms pursuant to section 667.5, subdivision (b).  The trial court sentenced appellant to 25 years to life plus four years in state prison.

Appellant contends the prosecutor committed prejudicial error by misstating the law on the reasonable doubt standard, thereby reducing the People's burden of proof in violation of appellant's Sixth and Fourteenth Amendments' fair trial and due process rights.  Appellant further contends that defense counsel's failure to object to the prosecutor's misstatement of law constituted ineffective assistance of counsel.  We disagree and affirm.

<h2 style="text-align:center">FACTUAL BACKGROUND</h2>

Appellant and Lawson were married in February 2015, but in June 2018 they were in the process of separating, and by September of that year they were legally separated.  In June 2018, Lawson was living in an apartment with her cousin, her 16-

---

[1] Undesignated statutory references are to the Penal Code.

year-old son, and her two daughters.[2]  Appellant did not live there, but visited periodically.

On June 20, 2018, appellant arrived at Lawson's apartment and kicked the door open.  Lawson repeatedly asked him to leave, but appellant refused and called Lawson names as he and Lawson began arguing.  When Lawson tried to leave the apartment, appellant became violent—he grabbed her, threw her against the wall, and ordered her to sit on the couch.  He then took Lawson's cell phone and took a nap.

Appellant's cell phone rang while he was sleeping, and Lawson picked it up.  Scrolling through the phone, Lawson saw that appellant had been communicating with a woman.  Appellant woke up, aggressively snatched his phone away from Lawson, and demanded to know why she was looking at his phone.  Lawson asked appellant what he was doing talking to this woman.  Grabbing Lawson by her arm and hair, appellant dragged her to the bedroom and said he was " 'going to teach [her] a lesson.' "  Appellant slammed Lawson against the wall and then threw her onto the bed.  When appellant approached Lawson as if to hit her, she kicked him and told him to get off her.  Appellant began pacing around the room and Lawson went into the bathroom.  She demanded that appellant leave but he refused.

At some point appellant picked up Lawson's 55-inch television from the dresser and threw it against the closet door, damaging both the television and the door.  He also kicked the walls and doors throughout the apartment, making about six holes in the walls and kicking a door off its hinges.

---

[2] Appellant and Lawson have no children together.

3

Lawson retrieved her son's cell phone and threatened to call the police. But before she could do so, appellant grabbed the phone and threw it at the bedroom door, causing the back of the phone and the battery to detach. He picked up the pieces of the phone and kept them. Appellant then pushed Lawson onto the bed and told her to go to sleep. He laid down next to her, and they stayed on the bed for the rest of the night.

On September 23, 2018, about 2:00 p.m. Lawson was at home in her apartment with her son, her cousin, and her friend, Tikesha Gilbert, when appellant kicked open the front door, breaking the lock. Upon entering the apartment appellant said he needed to take a shower and Lawson could not stop him. After showering, appellant walked around the apartment verbally harassing Lawson. Lawson's son came to his mother's defense, and appellant threatened him, saying, " 'I'll knock your little ass out.' " Lawson told appellant to leave her son alone and appellant pushed the boy in the face. Lawson then pushed appellant, and he pushed her back into the couch. When Gilbert told appellant to get out, appellant smashed his fist into the television, causing it to fly into the wall creating a large hole. Appellant then kicked a glass standing vase into the glass television stand, and everything shattered. As Gilbert called the police, appellant said, " 'I'm going to kill you, bitch,' " and ran out the door.

## DISCUSSION

### I. Appellant Forfeited Any Prosecutorial Misconduct Claim by Failing to Object Below

Appellant contends the prosecutor committed misconduct during closing argument by reducing the prosecution's burden of proving guilt beyond a reasonable doubt, and the trial court erred

4

by failing immediately to point out the error and correct the misstatement of the law. Specifically, appellant asserts that the prosecutor's statement that the reasonable doubt standard of proof is used to convict people in every type of criminal case throughout the country and should therefore not be viewed as "some kind of impossible standard that nobody can reach" misstated the law and trivialized the People's burden of proof. But defense counsel neither objected to the argument nor requested an admonition. Appellant's claim is therefore forfeited.

A. *Relevant background*

In closing argument to the jury defense counsel explained that the standard of proof beyond a reasonable doubt applied in criminal cases is the highest standard of proof used in any type of case. It is higher than the preponderance of the evidence standard applied in civil cases, and higher than the clear and convincing standard of proof applied in family law cases. Defense counsel emphasized that proof beyond a reasonable doubt requires jurors "to have an abiding conviction [of] the truth of the charge," and "you don't have that here."

In rebuttal, the prosecutor responded by arguing:

"Reasonable doubt. So that's the final concept here. Defense counsel[ ] started with that and ended with that, and I'll do the same and end with that. So reasonable doubt, it's important, right? And, yes, we are here in a criminal case, and it's one of the most important concepts that we have here, but it is something that is used not only in this courtroom where we are here today but also next door, down the hall, throughout the courtrooms throughout the county, throughout our entire country in every criminal case, and that means if a person is stealing a candy bar from Target all the way to a person who went out and

5

killed an entire family, it's the same concept, and it's used throughout every courtroom for every type of criminal case. So don't feel that it's some kind of impossible standard that nobody can reach."

Defense counsel neither objected nor requested that an admonition be given to the jury.

Immediately after closing arguments, the trial court instructed the jury that if its instructions on the law conflicted with anything the attorneys said, the court's instructions must prevail. (CALCRIM No. 222.) The trial court also instructed the jury on the presumption of innocence, and informed the jury it was the prosecution's burden to prove the charges beyond a reasonable doubt. "Proof beyond a reasonable doubt," the trial court instructed, "is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM No. 220.)

**B.** *Analysis*

" ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion— and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Thomas* (2011) 51 Cal.4th 449, 491; *People v. Hill* (1998) 17 Cal.4th 800, 820; *People v. Cowan* (2017) 8 Cal.App.5th 1152, 1161 (*Cowan II*) [claim of prosecutorial misconduct is reviewable only if timely objection and request for admonition made at trial; in the absence of an objection and request for admonition, matter is reviewable only if an admonition would not have cured the harm].) Moreover, even if an objection was made and sustained, the issue is still forfeited

6

for appeal if an admonition to the jury to disregard the improper comment would have cured the harm, but none was requested. (*People v. Silva* (2001) 25 Cal.4th 345, 373; *Cowan II*, at p. 1161.)

Here, as appellant concedes, defense counsel neither objected to the prosecutor's argument nor requested an admonition. And while appellant argues that the failure to object and request an admonition may be excused if either would have been futile or ineffective, he does not even suggest this was so in the present case. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 679; *People v. Arias* (1996) 13 Cal.4th 92, 159.) Indeed, elsewhere in his brief appellant contends that an immediate admonition to the jury would have been the only means of curing the harm from the prosecutor's improper argument. Appellant's failure to object and request an admonition to disregard the prosecutor's misstatement thus forfeited any claim of prosecutorial misconduct on appeal. (*Fuiava*, at p. 680 [where defendant failed to show objection and admonition would have been futile and would not have cured harm, appellate claims of misconduct were forfeited]; *Cowan II*, *supra*, 8 Cal.App.5th at p. 1161.)

## II. Defense Counsel Did Not Render Ineffective Assistance by Failing to Object to the Prosecutor's Argument or Request an Admonition

To avoid forfeiture of his prosecutorial misconduct claim, appellant argues that trial counsel was ineffective for failing to object to the prosecutor's argument and request an admonition.

To establish ineffective assistance of counsel, a "defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of

reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.)  "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation."  (*Mai*, at p. 1009.)  "[W]e 'defer[ ] to counsel's reasonable tactical decisions' and presume that 'counsel acted within the wide range of reasonable professional assistance.' [Citation.]  Thus, defendant ' "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " ' "  (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.)  "This rule 'is particularly apt' where, as here, 'the asserted deficiency arises from defense counsel's failure to object.  "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." ' "  (*Ibid*.)

Appellant cannot establish his counsel's inadequacy in this case for the simple reason that the prosecutor's remarks did not constitute error or misconduct.  Trial counsel thus cannot be deemed to have provided ineffective assistance for failing to object to proper argument.  (*People v. Turner* (2004) 34 Cal.4th 406, 431 [where defendant's prosecutorial misconduct claim fails, "his ineffective assistance of counsel claim predicated on the failure to object to this misconduct fails"].)

8

The applicable federal and state standards for establishing prosecutorial error or misconduct are well settled. " ' " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Suarez* (2020) 10 Cal.5th 116, 175; *People v. Williams* (2013) 56 Cal.4th 630, 671; *Parker v. Matthews* (2012) 567 U.S. 37, 45; *Darden v. Wainwright* (1986) 477 U.S. 168, 181 ["The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' "].)

While a prosecutor has significant latitude "in discussing the legal and factual merits of a case during argument," it is improper for the prosecutor to misstate the law, and in particular, the prosecution may not attempt to reduce its burden to overcome reasonable doubt on all elements of the offense. (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*); *People v. Marshall* (1996) 13 Cal.4th 799, 831.) " '[W]hen attacking the prosecutor's remarks to the jury, the defendant must show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 111 (*Bell*), quoting *Centeno*, at p. 667.) In reviewing a claim of prosecutorial misconduct based on a prosecutor's argument to the

9

jury, " 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno*, at p. 667; *Bell*, at p. 111.)

"Prosecutors should avoid drawing comparisons that risk confusing or trivializing the reasonable doubt standard." (*Bell*, *supra*, 7 Cal.5th at p. 111.) Our Supreme Court has also "generally discouraged prosecutors from using colorful analogies or displays" to illustrate the concept of reasonable doubt. (*Bell*, at p. 111; *Centeno, supra*, 60 Cal.4th at p. 667.) But there is nothing about the prosecutor's remarks in the instant case that trivialized the prosecution's burden or that could be characterized as "innovative but ill-fated attempts" to explain the reasonable doubt standard of which the high court has disapproved. (*Centeno,* at pp. 667, 671.) Unlike some cases in which prosecutors attempted to quantify reasonable doubt or characterize it as an everyday decision like changing lanes in traffic (see *Bell*, at p. 111; *People v. Nguyen* (1995) 40 Cal.App.4th 28, 35–36), the prosecutor here did not misstate the law or mischaracterize the reasonable doubt standard at all. Rather, the prosecutor told the jury, simply and accurately, that the reasonable doubt standard is applied in every criminal case throughout the country, regardless of the seriousness of the offense, and that it is not "some kind of impossible standard that nobody can reach." In short, nothing about the statement suggested that the jury's task was "less rigorous than the law requires" (*Centeno*, at p. 671), or in any way undermined the reasonable doubt standard (*Bell*, at p. 112).

Because the prosecutor's remarks did not amount to error or misconduct, defense counsel cannot be faulted for failing to object or request an admonition.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

11