Filed 5/23/16

## CERTIFIED FOR PARTIAL PUBLICATION[*]


## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX


| THE PEOPLE, | 2d Crim. No. B258587 |
|---|---|
| Plaintiff and Respondent, | (Super. Ct. No. F493872) (San Luis Obispo County) |
| v. | |
| RONALD J. COWAN, | |
| Defendant and Appellant. | |


During closing argument in this criminal case, the prosecutor told the jury that the presumption of innocence applies only until the charges are read. This grossly inaccurate definition of reasonable doubt could likely have resulted in a reversal of the judgment of conviction. The trial court's admonishment to the jury and its proper instructions concerning reasonable doubt compel us to affirm the judgment. We caution prosecutors to accurately state the law and not rely on harmless error as a safety net to ensure a conviction. The integrity of our system of justice demands nothing less.

When a prosecutor argues to a jury the presumption of innocence and the burden of proof beyond a reasonable doubt, she or he may not mislead jurors with an incorrect explanation that lightens the prosecution's burden. Here the prosecutor told the

---

[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

jury that the presumption of innocence is in place only when the charges are read. Such a grossly deceptive definition could have resulted in a reversal. The overwhelming evidence against the defendant and the trial judge's instructions rendered the misconduct harmless. A conviction should not rest on fortuities.

A jury found Ronald J. Cowan guilty of one count of sodomy of a person under age 10 (Pen. Code, § 288.7, subd. (a)[1]); two counts of oral copulation with a person under age 10 (§ 288.7, subd. (b)); and two counts of lewd acts on a child (§ 288, subd. (a)). The jury also found true that both counts of lewd acts on a child involved substantial sexual conduct. (§ 1203.066, subd. (b).) The trial court sentenced Cowan to 65 years to life. We affirm.

It is not necessary to discuss all the facts in the published portion of this opinion. Facts pertinent to the published portion of this opinion are stated in the Discussion section.

## [[FACTS

Cowan had a relationship with a woman named Keena. After the relationship ended, Cowan continued to visit Keena's family. He paid particular attention to Keena's younger brother D., who was then eight years old. He bought D. clothes and other gifts and took him on outings. D. and his friends stayed overnight at Cowan's home.

When D. became a teenager, Cowan turned his attention to D.'s cousin, A.J. A.J. was born in November 2007. A.J. lived with his mother, his grandmother, and periodically with his grandfather when his grandfather was not incarcerated.

Cowan would visit A.J. five times a week for hours at a time. He would bring him gifts every week and took him places. Between the time A.J. was two and four, Cowan was alone with him on more than 10 occasions.

When A.J. was three or four, he spent the night at Cowan's home. Cowan called A.J.'s mother to tell her he was bringing A.J. back because he was crying. Cowan returned A.J. between 11:30 p.m. and midnight. When A.J. got home, he could not stop

---

[1] All statutory references are to the Penal Code.

crying.  He kept touching his buttocks and saying it hurt.  A.J.'s mother and grandmother thought A.J. might have a rash.  A.J.'s mother put diaper rash cream on him, but she saw no sign of anything wrong.  It took several hours for A.J. to fall asleep.

In March 2012, A.J.'s mother lost custody of her children when she was incarcerated.  A.J. and his two-year-old sister were placed in foster care with Chanel Cooper.  A.J. was four and a half years old.  A.J. lived with Cooper, her husband and children for 18 months.

Within days of A.J.'s arrival, Cooper noticed A.J. exhibited sexualized behavior.  A.J. was playing with toys and said, "I want to sex you."  He would frequently do pelvic thrusting.  Almost every time he got into the bathtub, he played with his penis.  He would rub his bottom on people, the furniture and the wall.

Cooper first met Cowan about a week after A.J. was placed with her.  It was at a social services meeting.  Cowan asked if he could take care of A.J. and his sister part-time.  The person running the meeting said he would take it into consideration.  In the parking lot after the meeting, Cowan came up to Cooper.  Cowan was teary-eyed and said he missed A.J.  He gave her some toys for A.J.

On another occasion, Cowan walked up to Cooper teary-eyed, said that he missed A.J. and really wanted to see him.  He asked Cooper if she could arrange a visit.  Cooper told Cowan no, that it was against social services' rules.  Cowan told Cooper that he was a mentor for boys.  He used to be in the Big Brothers program but now he was doing it on his own.

Cooper said Cowan was present almost every time A.J.'s mother had unsupervised visits with her children.  A.J.'s mother had two visits a week.  She also saw Cowan at A.J.'s birthday party.  Cooper said, "[Cowan] was there at every possible visit he could be."

On the night of the birthday party, Cooper was putting A.J. to bed when he asked if he could sleep in her bed.  When Cooper said no, A.J. told her that he had been in Cowan's bed.  She asked A.J. why he was in Cowan's bed.  A.J. said because there was

3

nowhere else to sleep. When Cooper asked what they were wearing, A.J. replied that they were both wearing pajamas, but Cowan's pants fell down.

Shortly thereafter, one of Cooper's sons reported that he and his brothers were in their bedroom with A.J. They were talking about school when A.J. blurted out, "[A] guy named Ron put his wiener in [my] butt." Cooper talked to A.J. the next morning. A.J. confirmed that what he said the previous night was true. Cooper called A.J.'s social worker to report what A.J. said. While Cooper was waiting for the social worker to return her call, she put A.J. down for a nap. One of Cooper's sons walked into the room and A.J. said, "Ron put his wiener in my butt."

The social worker returned Cooper's telephone call and told her to call the police. The police interviewed A.J. and took him for a physical examination.

Cooper spoke with A.J. on the evening after the physical examination. She asked A.J. if he ever touched Cowan's "wiener" or if Cowan had touched his. A.J. said Cowan put A.J.'s penis in his mouth and let A.J. touch his. A.J. said it happened at Cowan's house.

Cooper testified A.J. frequently lied. When she would see him do something wrong, he would lie and deny he did it. His eyes would dart all around the room when he lied. When he told her about what Cowan did, his demeanor was different. He was very serious, humble and calm. She believed A.J. was telling the truth.

A.J.'s mother testified that after she completed a substance abuse program, Cowan helped her get an apartment so she could get her children back. Cowan purchased furniture, food, clothes and toys for the children. At one point Cowan asked A.J.'s mother, if he stayed the night, "what if [A.J.] wanted to sleep in the same bed [with] him." She replied that if Cowan stayed the night he would have to sleep on the couch.

A.J.'s grandmother testified that when her husband is in the residence he sometimes watches pornography. The pornography does not involve children. A.J. saw the pornography for a period of seconds before grandmother's husband turned it off.

Grandmother's husband testified that A.J. would turn on the pornography and view it for about five minutes before he told him to turn it off.

4

District Attorney Investigator Tracy Nix interviewed A.J. twice. The interviews were recorded and the recordings were played for the jury.

A.J. told Nix that Cowan put his "pee pee in [his] butt." A.J. said that it felt disgusting and that his penis felt like a hard baseball bat. Using two anatomical dolls, A.J. demonstrated what Cowan had done to him. A.J. also said that he and Cowan had touched each other's penises. After the interview, A.J. took two anatomically correct dolls and had one orally copulate the penis of the other. In the second interview, A.J. described acts of oral copulation that Cowan had committed.

A.J. was physically examined by Dr. Niska Abdul-Cater, an expert in evaluating child sexual abuse. She found no physical signs of abuse. She testified, however, that there are often no signs of sexual trauma in the anal area. Even when the victim is examined within 72 hours, findings are made in only 5 to 30 percent of the cases. Oral copulation generally leaves no physical signs.

A.J. testified at trial. He was six years old at the time. At first he denied remembering speaking to Nix. Then he said he spoke to her about Cowan, and told her the truth. A.J. also initially denied Cowan did anything to him. But when asked if Cowan "put his pee-pee in [his] butt at some point," A.J. said yes; it happened at Cowan's house and made him feel "[n]ot comfortable." A.J. said Cowan did nothing else to his private parts. After the recording of A.J.'s interview with Nix was played, A.J. said he told Nix the truth.

DEFENSE

Cowan testified on his own behalf. He denied the allegations. He said he had been in the court-appointed special advocate program, but he decided to leave the program and mentor D. on his own. There was less paperwork.

D. had been at his home alone one time. A few other times, D. and his friends slept at his house. When D. was around 17 years old and A.J. was two, Cowan started to spend more time with A.J.

A.J. had been to Cowan's home only twice. Once was with his mother. The other time they planned for A.J. to spend the night. There was a bedroom on the third

5

floor of Cowan's house.  A.J. had been there on the night of the sleepover.  Cowan watched television with A.J., but later A.J. started whining and wanted to go home.  Cowan could not calm him, so he called A.J.'s mother and took him home.

Cowan helped A.J.'s mother get an apartment so that she could get her children back from foster care.  Cowan never asked A.J.'s mother about sleeping in the same bed as A.J.

Dawn Clove knew Cowan because her son was one of D.'s friends.  Her son spent time with Cowan.  She trusted Cowan and did not believe his did what he was accused of doing.

Raymond Glove testified he has known Cowan for 10 years and had seen him interact with children.  He does not believe Cowan would do anything sexually inappropriate with children.

Doris McIntyre had been Cowan's neighbor for 28 years.  She had seen him interact with children in her family.  She does not believe he would have committed the charged offenses.

A forensic computer expert testified he recovered approximately 20,000 images from Cowan's computer hard drives.  There was some adult pornography.  But there was no child pornography.]]

DISCUSSION

Cowan contends the prosecutor committed misconduct in closing argument by misstating the presumption of innocence and the burden of proof.

Cowan cites the following from the prosecutor's closing argument as misconduct:

"[Defense Counsel] started to talk to you yesterday about talking to you about the presumption of innocence.  Let me tell you that presumption is over.  Because that presumption is in place only when the charges are read.  But you have now heard all the evidence.  That presumption is gone.  As a matter of fact, as the judge instructed you in the jury instructions, you'll find them in your packet.  Nothing the lawyers say is evidence.

6

[Our] opening statement is not evidence, our closing statements are not evidence and either are our questions.  So officially the presumption is over.

"[Defense counsel]:  Your Honor, I'm going to object; that's inaccurate.

"The Court:  Ladies and Gentlemen, again, this is argument.  So if anything that the attorneys say during argument does not coincide with my instructions on the law, you are to only consider my instructions."

The prosecutor continued:

"Juries all over this great country of our[s] use the standard of beyond a reasonable doubt to convict defendants every day.  They use the standard of beyond a reasonable doubt to convict people based solely on circumstantial evidence, right?  Not all trials unlike CSI have videotapes of defendants sodomizing little boys.  Or, you know, direct witnesses of bank robberies.  Juries convict based on circumstantial evidence and direct evidence every day across our great nation."

Cowan also challenges the following portion of the prosecutor's argument:

"You are chosen as jurors in this trial because of your common sense, everyday experiences.  And that's what you are supposed to use . . . when you sit down and deliberate this case.  You have to make a decision.  Just like you make decisions a hundred times a day throughout your day.  That's what you are going to do.  And you are going to use the standard of beyond a reasonable doubt using your reason.

"Beyond a reasonable doubt simply means that . . . after consideration of all the evidence in totality you're firmly convince[d] that guilt is the only reasonable interpretation of the evidence.

"What makes sense?  Isn't reasonable to conclude that Ronald Cowan who likes to surround himself with young boys; whom he pries away from working mothers who don't have a lot of time; whom he bribes with gifts, toys, money; whom he bribes their families with toys, and gifts and money and sporting events and sporting workout clothes, isn't reasonable to believe that the defendant committed these crimes.  It's not because he's creepy, it's because he did these things.

7

"Isn't it reasonable to base your decision to convict Ronald Cowan on the fact that he lavishes the boys with this affection[?] He was obsessed with [D.] as he told you. [D.] got too old to him, so he switched to A.J. . . .

"Isn't it a reasonable interpretation that A.J. came home with a sore bottom because the defendant had sodomized him? [A.J.] was crying because his trusted friend had betrayed him by molesting him? Isn't a reasonable interpretation of the evidence to believe that this man [had so much access to A.J.] and to convict this man because he had so much access . . . ; isn't it reasonable to convict him of these crimes? And isn't it reasonable after all, like I pointed out to believe that this man, who has this cavalier attitude about sex. . . . [i]s [the] same man who has the attitude towards A.J. and A.J. told you what he was thinking. . . [?] Isn't it reasonable to believe that the same man who had that attitude from the stand is this man who didn't care what A.J. thought and who took from A.J. what he wanted[?]"

It is improper for the prosecutor to misstate the law, and in particular to attempt to reduce the People's burden of proof beyond a reasonable doubt. (*People v. Marshall* (1996) 13 Cal.4th 799, 831.) Improper comments violate the federal Constitution when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the trial a denial of due process, (*People v. Hill* (1998) 17 Cal.4th 800, 819.) Even where the improper comments fall short of this test, they may constitute misconduct under state law if they involve the use of deceptive or reprehensible methods in an attempt to persuade the court or jury. (*Ibid.*)

If a prosecutorial misconduct charge is based on a prosecutor's argument to the jury, the court considers whether there is a reasonable likelihood the jury construed or applied any of the challenged statements in an objectionable manner. (*People v. Cole* (2004) 33 Cal.4th 1158, 1202-1203.) In making that determination, the court must consider the challenged statements in the context of the argument as a whole. (*Ibid.*)

In the first challenged statement, the prosecutor told the jury that the presumption of innocence is in place "only when the charges are read," and that "the presumption is gone."

8

The presumption of innocence is a fundamental component of a fair trial under our system of criminal justice. (*Estelle v. Williams* (1976) 425 U.S. 501, 503.) The presumption of innocence continues not only during the taking of testimony, but during the deliberations of the jury until they reach a verdict. (*People v. Arlington* (1900) 131 Cal. 231, 235.)

To tell the jury that the presumption of innocence is gone prior to the jury's deliberations is egregious misconduct. It strikes at the very heart of our system of criminal justice. Even the most unseasoned prosecutor should know better than to make such an argument to the jury.

The People argue that Cowan failed to preserve the issue by failing to object and request an admonition. But Cowan objected that the prosecutor was misstating the law. That is sufficient to preserve the issue. The defendant is not required to use the word "misconduct" in raising the objection. Moreover, the trial court admonished the jury that it was only to consider the court's instructions. Cowan preserved the issue.

The People argue the prosecutor's comments here were similar to those declared not to be misconduct in *People v. Booker* (2011) 51 Cal.4th 141. There the prosecutor told the jury: "'I had the burden of proof when this trial started to prove the defendant guilty beyond a reasonable doubt, and that is still my burden. It's all on the prosecution. I'm the prosecutor. That's my job.' [¶] 'The defendant was presumed innocent until the contrary was shown. That presumption should have left many days ago. He doesn't stay presumed innocent.'" (*Id.* at p. 183.)

In rejecting the contention that the remarks constitute misconduct, our Supreme Court stated: "Although we do not condone statements that appear to shift the burden of proof onto a defendant (as a defendant is entitled to the presumption of innocence until the contrary is found by the jury), the prosecutor here simply argued the jury should return a verdict in his favor based on the state of the evidence presented." (*People v. Booker*, *supra*, 51 Cal.4th at p. 185.)

But here the prosecutor did not simply argue that the presumption of innocence had been overcome by the evidence. Instead, she told the jury the presumption

9

ends with the reading of the charges. In other words, it does not apply at all. There is no way to rationalize such a statement as proper argument. It is wrong as a matter of law. It was intended to lighten the prosecution's burden of proof. It is misconduct plain and simple. The prosecutor should have known better.

The People's reliance on *People v. Cortez* (May 9, 2016, S211915) _ Cal.4th _ to show there was no misconduct is misplaced. In *Cortez*, during his rebuttal argument, the prosecutor stated: "'The court told you that beyond a reasonable doubt is not proof beyond all doubt or imaginary doubt. Basically, I submit to you what it means is you look at the evidence and you say, "I believe I know what happened, and my belief is not imaginary. It's based in the evidence in front of me."'" (*Id.* at p. _ [p. 60].) Defendant's counsel objected that the prosecutor misstated the law. Before the court could rule on the objection, the prosecution added, "That's proof beyond a reasonable doubt." (*Ibid.*) The majority of our Supreme Court concluded the prosecutor's statement, taken in context, did not constitute misconduct.

But the prosecutor's statement in *Cortez* is far less inimical to the presumption of innocence than the prosecutor's statement here that the presumption of innocence is in place only when the charges are read. The majority in *Cortez* described the prosecutor's remarks as an "incomplete" statement of the law. (*People v. Cortez*, *supra*, _ Cal.4th _ [p. 62].) The prosecutor's statement here was not incomplete, it was completely wrong.

Cowan also assigns as misconduct the prosecutor's statement that the jury must make a decision "[j]ust like you make decisions a hundred times a day throughout your day. That's what you are going to do. And you are going to use the standard of beyond a reasonable doubt using your reason." Cowan cites *People v. Nguyen* (1995) 40 Cal.App.4th 28, 36, where the court strongly disapproved of arguments suggesting the beyond a reasonable doubt standard is used in everyday life.

But a claim of prosecutorial misconduct is reviewable only if the defendant makes a timely objection at trial and requests the trial court to admonish the jury to disregard the impropriety. (*People v. Sapp* (2003) 31 Cal.4th 240, 279.) Here Cowan

10

neither objected nor requested an admonition. Under the circumstances, the matter is reviewable only if the admonition would not have cured the harm. (*Ibid.*) Any harm could have been cured by an admonition; the matter is waived.

Finally, Cowan cites as the third misconduct the prosecutor's statement that the jury could convict if it was reasonable to believe Cowan committed the offenses. But the prosecutor argued that considering the evidence in the aggregate the only reasonable conclusion is that Cowan is guilty. That is proper argument.

Although the prosecutor committed misconduct and defense counsel failed to object to one alleged misconduct, the errors are harmless beyond a reasonable doubt.

First, the trial court properly instructed the jury. We presume the jury followed the instructions. (*People v. Bonin* (1988) 46 Cal.3d 659, 699.)

Second, the trial court admonished the jury that in the event of any conflict between the attorneys' arguments and the court's instructions, the court's instructions prevail.

Third, the evidence of guilt was overwhelming. Cowan showed an obsessive interest in victim A.J. He would visit A.J. five times a week for hours at a time; he would bring him gifts and take him places. When A.J. was placed in foster care, he asked if he could take care of A.J. part-time. He tearfully approached Cooper and asked if he could visit A.J.

Most telling of all, when A.J. spent the night at Cowan's house, Cowan brought him home late at night crying. A.J. kept touching his buttocks and saying it hurt. It took A.J. several hours to fall asleep. Thereafter, A.J. blurted out to Cooper's sons that "a guy named Ron put his wiener in his butt."

Cowan points out that A.J.'s testimony was inconsistent about what occurred. But A.J. was only six years old when he testified. Most adults would find it difficult to testify about sexual matters in front of a jury, no less a seven year old. A surfeit of other evidence, including Cooper's testimony and Nix's interviews with A.J., supports the verdict.

11

Cowan points out that Cooper testified A.J. frequently lied. Initially, Cooper did not know whether to believe him when he told her what Cowan had done. But Cooper also testified that after speaking with A.J., she became convinced he was telling the truth. A.J. did not behave as he did when he was lying.

Cowan claims A.J. learned about sex while observing his grandfather watch pornography. But Cowan brought A.J. back to A.J.'s mother's house after spending the evening alone with Cowan. A.J. was crying inconsolably and complaining that his buttocks hurt. That was not the result of viewing pornography. It is entirely consistent with A.J.'s spontaneous statement that "a guy named Ron put his wiener in his butt."

The judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.