Filed 11/9/22  P. v. Grant CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEAN ALI GRANT,<br><br>    Defendant and Appellant. | A160415<br><br>(Alameda County Super. Ct. Case No. 18CR011120) |

A jury convicted defendant Sean Ali Grant of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1))[1] and a felon in possession of ammunition (§ 30305, subd. (a)(1)).  On appeal, defendant contends his convictions should be overturned on two grounds:  (1) the trial court abused its discretion in admitting expert witness testimony regarding slang terms; and (2) the prosecutor's closing argument misled the jury as to the People's burden of proof beyond a reasonable doubt.  We will affirm the conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of June 29, 2018, Eric R., the head of security at New Karibbean City (an Oakland nightclub), was performing his routine duties in

---

[1]    All subsequent statutory references are to the Penal Code unless otherwise noted.

anticipation of the nightclub's 10 o'clock opening.  As Eric R. was setting up rails in front of the club, defendant approached him and a scuffle ensued.  After another New Karibbean employee broke up the fight, defendant told Eric R., " 'It's a wrap for you[;] you better stop working here.' "

Defendant walked up the street and Eric R. followed him, asking whether defendant "was satisfied."  " 'Nah,' " defendant replied.  " 'Fuck that. It's a wrap.' "  Eric R. heard defendant use the Facetime cell phone application to ask an unknown man whether he had " 'that thang,' " a slang term for "gun or pistol."  Then, after asking the man where he was, defendant snapped a photograph of Eric R. with his cell phone and left the scene in a white sedan.

Fearing for his life, Eric R. called the police, who were present at the scene when defendant returned less than 30 minutes later.  Eric R. identified defendant on the spot, leading promptly to defendant's arrest for battery and criminal threats.  Officers searched defendant incident to the arrest and found a Toyota key.

The police discovered that the key was to a white Toyota Avalon sedan, parked about 50 yards away from where defendant was detained.  Visible through the front passenger-side window were the handle, grip, and extended magazine of a firearm resting on the floorboard.  The police seized the firearm and found live ammunition rounds in the magazine.  Further investigation revealed that the firearm was not registered to defendant but that the white Toyota was registered to a Jacqueline V., whom defendant had identified as his girlfriend during a traffic stop that occurred on April 4, 2018, when he was driving the Toyota.

The Alameda County District Attorney charged defendant with violations of sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1),

2

prohibiting felons from possessing firearms and ammunition, respectively. At trial, the People called Oakland police officer Omega Crum to testify as "an expert in the area of slang, particularly as it pertains to firearms and firearm accessories in the city of Oakland." The prosecutor posed to Crum a hypothetical scenario involving "Eric" and "Sean," modeled on the interaction between Eric R. and defendant. In Crum's opinion, Sean was referring to a firearm when he asked for " 'that thang,' " and when Sean told Eric " 'it's a wrap,' " Sean was saying he would kill Eric.

During closing argument, the prosecutor emphasized the reasonableness of the People's theory of the case, in which defendant knew that the firearm was in the Toyota sedan: "I submit to you that there's only one reasonable conclusion in this case based on all the facts that you heard and based on the law as it stands, and that is the defendant is guilty as charged." She then contrasted this reasonableness with the unreasonableness of any alternative: "The law appreciates that you can come up with unreasonable explanations and unreasonable possibilities on any given issue, any given fact. And if you look at just one fact all by itself, you might be able to think that some of those unreasonable possibilities are reasonable based only on that one piece. But if you take a step back and look at all the evidence that you received in this case, I submit to you that any other explanation should be rejected because it is unreasonable." Returning to the same theme in rebuttal, the prosecutor asked jurors "to do justice in this case. Be reasonable. If you do that, you will see that the defendant is guilty as charged."

The jury found defendant guilty of both charges.

## DISCUSSION

### A. Crum's Expert Opinion Testimony

Defendant contends the trial court erred in admitting Crum's expert opinion testimony as to the respective meanings of "thang" and "it's a wrap" in the hypothetical scenario sketched by the prosecutor. Relying on Evidence Code section 801, defendant contends Crum's testimony was "improper because it was not based on relevant, specialized knowledge and did not assist [the] jury by providing testimony on matters beyond common experience." (Boldface and capitalization omitted.)

" 'The competency of an expert "is in every case a relative one, i.e. relative to the topic about which the person is asked to make his statement." ' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1175.) " ' "Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 322, quoting *Seneris v. Haas* (1955) 45 Cal.2d 811, 833.) " 'The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.' " (*People v. Duong* (2020) 10 Cal.5th 36, 60.)

Evidence Code section 801 sets forth two criteria for the admission of expert opinion testimony. First, the testimony must be "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Second, the testimony must be "[b]ased on" certain reliable matter, such as the expert's "special knowledge, skill, experience, training, and education." (Evid. Code, § 801, subd. (b).)

4

We first address defendant's contention that Crum's testimony was improper because it was not based on relevant, specialized knowledge. (See Evid. Code, § 801, subd. (b).) Here, the trial court designated Crum "an expert in the area of slang, particularly as it pertains to firearms and firearm accessories in the city of Oakland." Slang is "[l]anguage of a highly colloquial type, considered as below the level of standard educated speech, and consisting either of new words or of current words employed in some special sense." (Oxford English Dict. (2d ed. 1989).)

As the trial court noted, Crum's expertise regarding the slang terms "thang" and "wrap" derived from Crum's considerable experience as a police officer in Oakland. Crum worked for 18 years with citizen informants, who are "just normal citizen[s]" who want "to provide information to the police department." Crum also dealt with confidential informants, a category that includes people who inform "for monetary gains" as well as people who cooperate with police after being arrested. With respect to "firearms activity," Crum conducted over 200 interviews with suspects and witnesses, and also communicated with family, friends, and victims of known suspects. Moreover, in his capacity as the "wire room coordinator," Crum listened to wiretapped conversations in which firearms were discussed by "gang members" and "people that have committed some type of violence in the city of Oakland." Crum also reviewed social media posts and the contents of cell phones seized under warrant, both of which featured references to firearms. From this experience, Crum observed that firearms were often referred to by slang terms like "strap, a hammer, *thang*, [and] glizzy." (Italics added.) As for "it's a wrap," Crum testified the phrase could be used either as a cue to bring an activity to a close, or to mean, "I'm going to kill you."

5

On this record, the trial court did not abuse its discretion in determining that Crum could reliably testify about the slang terms at issue based on relevant special knowledge he developed during his many years working as an Oakland police officer. (Evid. Code, § 801, subd. (b).) Moreover, the trial court could properly determine that firearms-related slang lay "sufficiently beyond" the "common experience" of defendant's jury such that Crum's expert opinion would be of assistance as contemplated under Evidence Code section 801, subdivision (a). In sum, the trial court acted within its discretion in admitting Crum's testimony.

Finally, defendant contends that Crum's expert testimony—which was based in large part on Crum's investigations of violent crimes and gang crimes—improperly implied to the jurors that defendant was a violent criminal or affiliated with gangs. We are not persuaded. As the record reflects, the trial court admonished the jury during Crum's testimony, as follows: "Admonition to the jurors that although this officer has worked in certain—on cases involving gang members and violent crime, that there is absolutely no intention or allusion that's made in terms of the defendant in this case that he is involved in gangs or that he is involved in violent crime." We assume the jury heeded this admonition (*People v. Burgener* (2003) 29 Cal.4th 833, 874), and no basis for relief appears.

## B. Alleged Error in the Prosecutor's Closing Argument

Defendant also contends the prosecutor erred during her closing argument by minimizing the People's burden to prove guilt beyond a reasonable doubt. Specifically, he argues the prosecutor misstated the burden of proof when she repeatedly urged jurors to "be reasonable" and use "common sense."

6

Claims of prosecutorial error are forfeited on appeal if the defendant fails to object below to the asserted error and does not request an instruction or admonition to lessen any possible prejudice. (See *People v. Nguyen* (1995) 40 Cal.App.4th 28, 36, citing *People v. Ghent* (1987) 43 Cal.3d 739, 762.) Here, defendant's failure to object to the claimed error forfeits review of the issue on appeal.

Seeking to avoid this conclusion, defendant argues his trial counsel's failure to object constituted ineffective assistance. Such a claim requires defendant to show: (1) counsel's representation "fell below an objective standard of reasonableness" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)

Defendants raising a claim of ineffective assistance of counsel on direct appeal will prevail only "in those rare instances where there is no conceivable tactical purpose for counsel's actions." (*People v. Lopez* (2008) 42 Cal.4th 960, 972 (*Lopez*).) "This is particularly true where . . . the alleged incompetence stems from counsel's failure to object." (*Ibid.*) " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*Ibid.*, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) The question here is whether the record establishes that defendant's trial counsel had no conceivable tactical purpose for failing to object to the prosecutor's argument.

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions,' " that "there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury

drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667, quoting *People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

As relevant here, the trial court instructed with CALCRIM No. 223 as follows: "Facts may be proved by direct or circumstantial evidence or by a combination of both. . . . Circumstantial evidence does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which you may logically and reasonably conclude the truth of the fact in question." (Italics omitted.) The court also instructed with CALCRIM No. 225 as follows: "Before you may rely on circumstantial evidence to conclude that the defendant had the required intent and/or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent and/or mental state. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent and/or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent and/or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." Finally, the trial court's instruction with CALCRIM No. 226 included the following language: "In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have."

Consistent with these instructions, the prosecutor reminded the jurors that, as earlier discussed during jury selection, they should use their "common sense" and should "evaluate humans generally to decide how much of a witness' testimony" to believe. At another point, she argued to the jurors: "I submit to you we have both direct and circumstantial evidence of the defendant's guilt in these crimes. I submit to you when you look at all of the circumstantial evidence together, the only reasonable conclusion is that the defendant is guilty." More specifically, the prosecutor argued that "the fact that the gun is found in the car," "in combination with the fact that someone saw [defendant] driving that car, in combination with the fact that he had the key, in combination with the fact that no one else is seen in, near or around that car, and in combination with the fact that he literally threatened someone with a gun 25 minutes beforehand, the only reasonable conclusion of that circumstantial evidence is that the defendant possessed a firearm, he knew he possessed a firearm." A little later, the prosecutor told the jury: "Please do use your common sense. Your common sense indicates to you that the defendant's conduct, his statements, the officers' observations, the fact that there's a gun there, and frankly, even the fact that there's a bunch of low-level DNA on the gun, all corroborate what [Eric R.] heard and what I submit to you is the theory of this case, which is that the defendant went and got that gun, came back." Toward the end of her opening argument, the prosecutor reiterated: "Submit to you that when you look at all of the evidence, the direct evidence, the circumstantial evidence, and all of the indisputable evidence, that the only reasonable [conclusion] is that the defendant is guilty."

True, the prosecutor could have been more precise by more completely arguing that the only reasonable conclusion to be drawn from the totality of

9

the direct, circumstantial, and undisputed evidence is that defendant is guilty *beyond a reasonable doubt*.  But to the extent the prosecutor erred in being less than precise in her argument, this is not a case where there was "no conceivable tactical purpose" for defendant's trial counsel's failure to object.  (*Lopez, supra*, 42 Cal.4th at p. 972.)  As a tactical matter, defense counsel could reasonably decide to use his own closing argument to emphasize and focus on the People's burden to prove guilt beyond a reasonable doubt.

And that is what defendant's trial counsel did, in spades.  Defense counsel started by observing that "[m]ere accusations don't equal proof beyond all reasonable doubt.  Much more is needed. . . .  [¶] . . . Proof beyond all reasonable doubt is what's needed."  Defense counsel proceeded to argue—more than two dozen times—that the prosecution had the burden to establish defendant's guilt beyond a reasonable doubt and that the prosecution's evidence did not meet that standard.  Defense counsel's argument attacking the prosecution's case included the multivalence of the word "thang," the theme that animated the cross-examination of Crum, as one example of the reasonable doubt in the case.  This, as indicated, was but one of many remarks made by defense counsel to counter or otherwise minimize the prosecution's evidence.  Indeed, defense counsel's argument successfully prompted the prosecutor to agree, in her rebuttal argument, that she had the burden to prove guilt beyond a reasonable doubt, though she proceeded to argue that reasonable doubt did not arise from counsel's speculative arguments or the fact that certain evidence was not presented.  In any event, because the prosecutor's remarks in her opening argument appeared to largely track the concepts imparted in the jury instructions, it appears entirely conceivable that defendant's trial counsel believed he could more

10

effectively use his closing argument to emphasize the People's burden to prove guilt beyond a reasonable doubt.

Finally, defendant contends his trial counsel was ineffective for failing to object when the prosecutor, during rebuttal, told the jurors "to do justice in this case. Be reasonable. If you do that, you will see that the defendant is guilty as charged." We are not persuaded.

Specifically, the prosecutor made these remarks in addressing defense counsel's suggestion that "coincidence" explained the firearm's presence in the car to which defendant had a key. Observing that a coincidence is defined as "a remarkable concurrence of events or circumstances without apparent causal connection," the prosecutor listed a number of coincidences that one would have to find in order to conclude that defendant lacked knowledge of the firearm's presence, including that Eric R. happened to mishear defendant say " 'thang' " and that " 'thang' " happened to be slang for a firearm; that Eric R. told 9-1-1 that defendant was driving away in a white car; that defendant returned to the scene and tried to avoid the police officers who had arrived; and that defendant happened to be found with a key that happened to open a white car in the area that happened to contain a firearm and ammunition. "If I kept going," she argued, "I'd be right in that scary world where it's okay to say all those things are just a coincidence and it's okay for this felon to have that gun in his car. But it's not just a coincidence because it's not reasonable." It was at this point that the prosecutor remarked: "That is why I'm asking all of you ladies and gentlemen to do justice in this case. Be reasonable. If you do that, you will see that the defendant is guilty as charged."

Viewing the prosecutor's remarks in context, it is readily apparent that her exhortation to the jurors to "be reasonable" was a call for the jurors to be

11

skeptical of defense counsel's argument that a series of coincidental occurrences could reasonably explain why defendant had no knowledge of the firearm.  This was consistent with CALCRIM No. 225, which told the jurors that "when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."  And as indicated, the jury heard both the prosecutor's rebuttal argument and the trial court's instruction explaining that the People had the burden to prove guilt beyond a reasonable doubt.  Viewing the entirety of the circumstances, there is no "reasonable likelihood the jury understood or applied the complained-of comment[] in an improper or erroneous manner."  (*People v. Frye*, *supra*, 18 Cal.4th at p. 970.)  Accordingly, we find no error in the prosecutor's rebuttal remarks, and in turn, no ineffective assistance of counsel in the decision not to object to such remarks.

In sum, we reject defendant's challenges based on prosecutorial error and on defense counsel's alleged ineffectiveness.

### DISPOSITION

We affirm the conviction.


FUJISAKI, J.

WE CONCUR:


TUCHER, P.J.


PETROU, J.


*People v. Grant* (A160415)